# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# - BROWNSVILLE DIVISION -

| | |
|---|---|
| ANTONIA RODRIGUEZ § | |
| § | |
| VS. § | CIVIL ACTION NO. B-98-040 |
| § | |
| BROWNSVILLE HOUSING AUTHORITY; § | |
| CITY OF BROWNSVILLE; § | |
| IRMA SOLITAIRE, INDIVIDUALLY AND § | |
| IN HER OFFICIAL CAPACITY; AND § | |
| ROGERIO LOPEZ, INDIVIDUALLY AND § | |
| IN HIS OFFICIAL CAPACITY § | |

United States District Court
Southern District of Texas
ENTERED

MAR 1 1 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before this court is Defendant City of Brownsville's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. (Docket No. 37). Plaintiff Antonia Rodriguez has filed her Response to Defendant City of Brownsville's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. (Docket No. 38). Defendant City of Brownsville has filed a Reply to Plaintiff's Response to Defendant City of Brownsville's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. (Docket No. 39).

On February 17, 1999, the District Court granted an Agreed Order Dismissing Certain Claims against Defendants Brownsville Housing Authority, Rogerio Lopez, and Irma Solitaire. (Docket No. 44). The Agreed Order dismissed the claims under the Texas Whistleblower's Act, Tex. Gov't Code ch. 554 (Vernon 1994 & Supp. 1999), and the liberty interest claims arising under the Fourteenth Amendment.

For the reasons set forth below, this court recommends that Defendant City of Brownsville's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint be granted in part.

## FACTUAL BACKGROUND

The following factual summary is based on a review of Defendant City of Brownsville's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 37), Plaintiff's Response (Docket No. 38), and Reply to Plaintiff's Response (Docket No. 39).

Plaintiff Antonia Rodriguez ("Rodriguez") brings suit against the Brownsville Housing Authority ("BHA"), the City of Brownsville ("the City"), Irma Solitaire, in her individual and official capacity, and Rogerio Lopez, in his individual and official capacity. This suit arises from Rodriguez's termination as a BHA employee on or about December 16, 1997. Rodriguez brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for an alleged violation of her rights under the First and Fourteenth Amendments to the United States Constitution. (Docket No. 12). Rodriguez alleges that the Defendants wrongful termination and retaliatory acts against Rodriguez violated her right of free speech. *Id.* Further, Rodriguez alleges that the City conspired with the other Defendants to violate her First Amendment rights. *Id.*

Rodriguez was employed by BHA as a fraud investigator with a portion of her duties being the internal investigation of BHA. *Id.* Beginning July 21, 1997, Rodriguez was under the immediate supervision of Acting Executive Director Irma Solitaire ("Solitaire"). *Id.* On or about November 6, 1997, the Board of Directors replaced Solitaire with Acting Executive Director Rogerio Lopez ("Lopez"). *Id.*

During her employment, Rodriguez uncovered and gave confidential information to the Office of the Inspector General and the FBI. *Id.* This information later led to charges against certain employees for criminal violations and violations of HUD's policies and procedures. *Id.* Solitaire allegedly harassed, threatened, defamed, intimidated and humiliated Rodriguez in

retaliation for her actions. *Id.* In November 1997, while under Lopez' supervision, Rodriguez filed an "agenda request form" with the City requesting to be placed on the December 2, 1997 agenda of the Brownsville City Commissioners meeting. *Id.* Rodriguez' intention was to discuss alleged complaints by the BHA staff against various BHA board members, the internal federal investigation of the BHA, and the City Commission's alleged threats to BHA board members. *Id.*

On or about November 26, 1997, City Commissioner Ernie L. Hernandez sent Lopez a faxed message requesting that he look into the allegations that the City Commissioners were threatening BHA directors to resign. (Docket No. 38). Subsequently, Rodriguez' request to be placed on the agenda was denied by the City to allegedly allow City Manager, Carlos Rubenstein, time to investigate the matter. *Id.*

On or about December 1, 1997, Lopez issued a memorandum to Rodriguez in which he requested that she provide him with any and all evidence to support the allegations stated in her City Commissioners meeting agenda request form. (Docket No. 12). *Id.* Rodriguez failed to produce such evidence. *Id.* Subsequently, on December 8 and 9, 1997, Lopez called Rodriguez into his office to discuss his evidentiary request. *Id.* at Exhibit C. Following this meeting, both Lopez and Rodriguez agreed to meet with the Board of Directors in executive session on December 16, 1997 to further discuss her allegations. *Id.* However, Rodriguez was terminated the afternoon of December 16, 1997 prior to the scheduled meeting. The alleged reasons for her termination included refusing to abide by her job description[1], failing to produce the evidence

---

[1] In a memorandum issued to Rodriguez, Lopez warned her that she was taking too long with her internal investigation and exceeding the scope of her job description as a fraud detection investigation. (Docket No. 12, Exhibit C). Lopez attached Rodriguez's job description to the

3

she had to support allegations made in her "agenda request form," and not "working" with the staff in performing her assigned functions within the agency. *Id.* at Exhibit E.

Rodriguez alleges that BHA's actions in terminating her were unrelated to her job performance, but were in fact taken in retaliation for requesting to appear at the City Commissioners' meeting and for exposing the alleged wrong doings by BHA personnel. *Id.* Further, Rodriguez argues that the City, in denying her request to appear at the Commissioners meeting, deprived her of her right of free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. *Id.* Rodriguez, however, admits that the City had no direct control over her termination. *Id.* Additionally, Rodriguez argues that the events set forth above constitute circumstantial evidence of a conspiracy between the City, through its officials, and the BHA to violate her First Amendment rights. (Docket No. 38).

## LEGAL BACKGROUND

### STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

A complaint should be dismissed for failure to state a claim if "it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957); *Moore v. Carwell*, 1999 WL 76957, *2 (5th Cir. 1999). A court may dismiss a complaint if the plaintiff cannot possibly prevail on his or her claims. *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

### MUNICIPAL LIABILITY

In order to show liability under 42 U.S.C. § 1983, a plaintiff must show that the

---

memorandum and indicated that she would be terminated if she failed to adhere to it. *Id.*

4

alleged damages were affirmatively caused by a "policy, custom, or practice" of the defendant. *Monell v. New York Dept. Social Services*, 436 U.S. 685 (1978). In the instant case, Rodriguez attempts to impute liability to the City for the acts of the BHA in allegedly wrongfully terminating her and depriving her of her rights under the First and Fourteenth Amendments.

At least one court has addressed the issue of municipal liability based on the actions of a municipal housing authority. In *Norris v. Housing Authority of the City of Galveston*, 962 F. Supp. 96 (S.D. Tex. [Galveston Div.] 1997), the former executive director ("Norris") of the Galveston housing authority brought suit against the housing authority board, the City of Galveston ("City"), and the Mayor for violations of his rights under 42 U.S.C. §§ 1981, 1983 and 1985. *Norris,* 962 F. Supp. at 97. He also brought state law claims for breach of contract and intentional infliction of emotional distress. *Id.* Norris based his claims on allegations that the Mayor tried to persuade the housing authority board to terminate him. *Id.* at 98. Norris sought to impose liability on the City by arguing that because the Mayor has the power to appoint commissioners to the housing authority board, the acts of the board represent the official policy of the City. *Id.* at 99.

In reaching its decision, the court noted several important factors. First, the housing authority is an autonomous political body pursuant to Tex. Loc. Gov't Code § 392.031. *Id.* Although the Mayor has the power to appoint board members, the Mayor no more controls their decision making than the President does the federal judges he appoints. *Id.* The court further observed that there was no evidence that the City, through the Mayor, either interfered with the Plaintiff's rights or had anything to do with the process afforded to Norris

5

in a public hearing. *Id.* Based on these observations, the court held that the mere fact that the Mayor has the power to appoint the commissioners does not make the City liable for the acts of the board. *Id.*

The holding in *Norris* is controlling in the case at hand. As in *Norris*, the BHA is a political entity separate and distinct from the City of Brownsville. *See* Tex. Local Gov't Code § 392.011(b) (Vernon 1988). At the time of the incident made the basis of this suit, Rodriguez was not employed by the City but rather was employed by the BHA. Further, no City employee acted in a supervisory capacity over Rodriguez. Rodriguez's supervisors, Lopez and Solitaire, were employees of the BHA and appointed by the BHA Board.

Further, there is no evidence that the City interfered, through any of its officials, with Rodriguez's rights. The City had no control over Rodriguez's investigation and eventual termination. It is undisputed that the Texas Local Government Code authorizes the "presiding officer" of a municipality's governing body to appoint commissioners to the municipal housing authority. Tex. Local Gov't Code § 392.031 (Vernon Supp. 1999). Further, the city mayor has the authority to remove housing authority commissioners for "inefficiency, neglect of duty, or misconduct in office." Tex. Local Gov't Code § 392.041 (Vernon 1988). However, in light of *Norris*, this connection is too attenuated to impose liability on the City for personnel actions taken by the BHA. The mere fact that a municipality's presiding officer has the power to appoint or remove the commissioners does not suggest that the acts of the BHA represent the official policy of the City.

Absent any evidence that the City interfered with her rights under the First or Fourteenth Amendments, Rodriguez has failed to state a cause of action under 42 U.S.C.

§ 1983. *See Monell v. New York Dept. Social Services*, 436 U.S. 685 (1978).

## CONSPIRACY TO VIOLATE FIRST AMENDMENT RIGHTS

Rodriguez alleges that the aforementioned facts circumstantially establish that the City entered into a conspiracy with the BHA to violate her First Amendment rights. A conspiracy claim may be charged under section 1983 to impose liability on a group of defendants without regard to who committed the particular act. *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir. 1995). However, "a conspiracy claim is not actionable without an actual violation of section 1983." *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1995).

As discussed above, Rodriguez has failed to establish that the acts of the BHA represent the official policy of the City as required to state a cause of action under 42 U.S.C. § 1983. Therefore, absent an actual violation of section 1983, Rodriguez's conspiracy claim is not actionable.

IT IS THEREFORE RECOMMENDED that Rodriguez's claim against the City of Brownsville pursuant to 42 U.S.C. §§ 1983 and 1988 for an alleged violation of her rights under the First and Fourteenth Amendments be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Rodriguez's claim against the City of Brownsville for allegedly conspiring with the BHA to violate her First Amendment rights be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. See *Douglass v. United Service Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this the ___9TH___ day of March, 1999.

_____
John Wm. Black
United States Magistrate Judge