72

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
- BROWNSVILLE DIVISION -

United States District Court
Southern District of Texas
ENTERED

JAN 25 2000

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| ANTONIA RODRIGUEZ § | |
| § | |
| VS. § | CIVIL ACTION NO. B-98-040 |
| § | |
| BROWNSVILLE HOUSING AUTHORITY, § | |
| CITY OF BROWNSVILLE, IRMA § | |
| SOLITAIRE, INDIVIDUALLY AND IN § | |
| HER OFFICIAL CAPACITY, AND § | |
| ROGERIO LOPEZ, INDIVIDUALLY § | |
| AND IN HIS OFFICIAL CAPACITY § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

By Order dated September 20, 1999, (Docket No. 64) Hon. Filemon B. Vela, United States District Judge referred this matter back to the undersigned in order to conduct an evidentiary hearing to determine whether there was any merit to plaintiff's conspiracy claims. This hearing was held on December 6, 1999.

### RECOMMENDATION

The facts of this case are outlined in a Report and Recommendation dated March 11, 1999 (Docket No. 45) and will not be repeated here.

At the evidentiary hearing held on December 6, 1999, testimony was taken from the following witnesses:

1. Ernie Hernandez, City Commission Member.

2. Pat Lehman, former member of the Board of the Brownsville Housing Authority.

3. John Chosy, former Brownsville Housing Authority attorney.

4. Antonia Rodriguez, plaintiff.

5. Jose G. Urquiza, former member of the Board of the Brownsville Housing Authority testified by affidavit.

Commissioner Hernandez testified that in November 1997, there were discussions about replacing some of the Brownsville Housing Authority ("BHA") Board members. Commissioner Hernandez said that he had know Raul Chapa, a BHA foreman on a casual basis for about twenty-five years, and that he also knew John Chosy and Antonia Rodriguez. Commissioner Hernandez knew Rogerio Lopez, the Executive Director of the BHA, now deceased. Mr. Lopez had done some bookkeeping work for Commissioner Hernandez.

According to Commissioner Hernandez he became aware of the fact that Ms. Rodriguez had asked to be on the agenda of a City Commission meeting. At the time Ms. Rodriguez was working as an investigator for the BHA looking into misuse of BHA property. Commissioner Hernandez testified that Ms. Rodriguez's request to be on the agenda which had been faxed to him and the other Commissioners in accordance with normal procedures had caused a stir, since she wanted to talk about actions by City Commissioners which violated the law. Commissioner Hernandez contacted Mr. Chosy and asked why a request to be on the agenda had not come from the Executive Director.

Commissioner Hernandez testified that he knew Ms. Rodriguez had been fired, but that he had nothing to do with that action.

Mr. Lehman testified that he served as a member of the BHA Board from July to October or November, 1997. He was asked to resign by the mayor. He remembered being asked by the City Manager what the agenda request by Ms. Rodriguez was about. He responded that he did

2

not know. Mr. Lehman testified that he had a concern about Ms. Rodriguez stating that she represented the BHA in her agenda request.

Mr. Lehman testified that he had had conversations with Ms. Rodriguez about her investigations of Mr. Chapa. He knew that Ms. Rodriguez had supported his staying on the BHA Board. Ms. Rodriguez had shown him a letter in which Mr. Lopez had asked her to substantiate her allegations of misconduct by City Commissioners. (This letter is dated December 1, 1997, and is Exhibit 5).

Mr. Chosy testified that he was the attorney for the BHA from October 1997 to June 1999. He received one call from Commissioner Hernandez asking about the allegations Ms. Rodriguez made in her request to be on the agenda.

Ms. Rodriguez testified that she worked for the BHA from February 1997 to December 1997 when she was fired. While employed by BHA she was investigating fraud and mismanagement and working with the FBI and the Inspector General of HUD. She testified that she had been advised by an employee in the City Secretary's office that the City Manager would investigate her allegations. (See Exhibit 3).

Ms. Rodriguez stated that she was fired on December 16, 1997 for insubordination. (Exhibit 6).

Ms. Rodriguez stated that she did not know what had taken place during the conversation between Messrs. Hernandez and Chosy and that she believed there was a conspiracy to fire her based solely on her interpretation of the events which had occurred with respect to the request that she made to be placed on the agenda of the City Commission.

The affidavit of Mr. Urquiza states that on December 16, 1997, Executive Director Lopez

3

told him that Ms. Rodriguez had indicated that a group of Housing Authority employees had wanted to appear before the City Commission to make the point that the City Commission did not have the authority to remove BHA board members. According to Mr. Lopez, Ms. Rodriguez had told him she had no evidence of wrongdoing by the City Commissioners.

This Court is of the opinion that no evidence direct or circumstantial of a conspiracy to fire Ms. Rodriguez was presented. The Plaintiff correctly argued that a conspiracy may be shown by circumstantial evidence. In this case there is no evidence, only conjecture.

IT IS THEREFORE **RECOMMENDED** that this case be **DISMISSED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 24th day of January 2000.

John Wm. Black
United States Magistrate Judge

4